[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11179

Non-Argument Calendar

_____

WILLIAM BODNER,
TERI BODNER,

Plaintiffs-Appellants,

*versus*

THUNDERBIRD PRODUCTS CORP.,
PORTER, INC.,
d.b.a. FORMULA BOATS,

Defendants-Appellees,

MOTION SYSTEMS CORPORATION,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:19-cv-00351-TKW-MJF

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

William Bodner was injured by the engine compartment hatch of a boat manufactured by Thunderbird Products Corp. and Porter, Inc., both doing business as "Formula Boats." Bodner and his wife appeal the summary judgment for Formula Boats, arguing that the district court abused its discretion by excluding their liability expert. After careful review, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Bodner, a boat mechanic, was working on the engine of a boat manufactured by Formula Boats when the boat hit a wake and the 400-plus pound engine compartment hatch fell on him. Bodner and his wife sued Formula Boats, alleging that the hatch and its lift actuator (which raised and lowered the hatch) were defective and unsafe, and that Formula Boats didn't adequately warn of this danger.

The Bodners' theory of the case, as reflected by their liability expert Richard Schiehl's report, was that the hatch lift actuator was defective as designed and installed for two reasons: (1) the physical

placement of the actuator on the hatch door; and (2) the actuator's dynamic load capacity relative to the hatch door's weight. More specifically, Schiehl opined, first, that "the configuration of the engine compartment and hatch require[d] the actuator [to] not be centered on the hatch." As a result, "much of the hatch weight [was] starboard of the actuator"—such that "[t]he actuator, as installed, carrie[d] part of the load from the side of the actuator, not in-line with the actuator movement." Second, Schiehl opined that the actuator's 500-pound dynamic load rating was insufficient to support the hatch door, which weighed 425 pounds with its built-in storage compartments empty.

In Schiehl's opinion, the boat needed either a higher-rated actuator or "a second actuator of the same rating . . . to support and stabilize the hatch." Schiehl also cited—as a basis for his opinion that the actuator was defectively designed and installed—the fact that, when "[t]he actuator was replaced with the same model" actuator after Bodner's injury, the shaft of the replacement actuator bent "[i]mmediately after installation and during normal operation of the hatch." On appeal, the Bodners refer to the bent-replacement part of Schiehl's expert opinion as the "second basis for [Schiehl's] [f]irst [o]pinion" and to the load-carrying part as the "third basis."

Finally, Schiehl also expressed the opinion that the actuator was unsafe because Formula Boats provided: (1) no backup or safeguard to prop open the hatch door should the actuator fail; (2) no

owner's manual instructions about how to use the hatch safely; and (3) no warning labels related to use of the hatch.

Formula Boats moved to exclude Schiehl's opinions under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). It argued Schiehl was unqualified to render the opinions in his expert report and that those opinions were unreliable and unhelpful.

The district court granted Formula Boats' *Daubert* motion. It found Schiehl unqualified, his methodology unreliable, and his opinion on warnings unhelpful. As to his qualifications, the district court explained that Schiehl was "not qualified to opine on the design or location of the actuator, the need for a second actuator or strut, or the cause of the actuator's failure because he's not a mechanical engineer" and it saw "nothing in his training or experience involving marine design or engineering." The district court also found Schiehl's opinions unreliable because "he didn't perform any testing or provide any calculations to support his opinions." The district court synthesized Schiehl's opinion as concluding that, because "the product failed, . . . it must have been defective," and explained "that sort of *ipso facto, ipse dixit* opinion is exactly what *Daubert* seeks to keep out of court."

The Bodners moved to clarify the breadth of the district court's exclusion order, specifically asking whether it applied to the second and third bases of Schiehl's first opinion. The district court explained that its order "necessarily encompass[ed] Mr. Schiehl's 'overall opinion' as well as the supporting opinions/reasons he provided for that opinion."

Formula Boats moved for summary judgment, and the Bodners conceded that the motion should be granted because their liability expert had been excluded. Based on this concession, the district court granted summary judgment for Formula Boats. The Bodners timely appealed.

## STANDARD OF REVIEW

We review a district court's *Daubert* rulings under "the deferential abuse-of-discretion" standard, meaning "we must affirm unless we find that the district court has made a clear error of judgment[] or has applied the wrong legal standard." *United States v. Frazier*, 387 F.3d 1244, 1258–59 (11th Cir. 2004) (en banc). It's "axiomatic that a district court enjoys 'considerable leeway' in making these determinations." *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "Even where a ruling excluding expert testimony is 'outcome determinative' and the basis for a grant of summary judgment, our review is not more searching than it would otherwise be." *Adams v. Lab'y Corp. of Am.*, 760 F.3d 1322, 1327 (11th Cir. 2014) (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 142–43 (1997)).

## DISCUSSION

The Bodners argue the district court erred in barring Schiehl from testifying on the second and third bases of his first opinion. They also say their failure to warn claim should've survived summary judgment. We address each argument in turn.

*Daubert Order*

Under Federal Rule of Evidence 702, the proponent of an expert opinion bears the burden of establishing (1) that the expert witness is qualified and can offer (2) reliable and (3) helpful testimony. *Frazier*, 387 F.3d at 1260 (citing rule 702). The district court functions as "gatekeeper," excluding expert testimony not meeting these three prerequisites so that the factfinder "bases its determinations on relevant and reliable evidence, rather than on speculation or otherwise unreliable conjecture." *See id.* at 1272.

The Bodners argue that the bent-replacement and load-carrying parts of Schiehl's opinion should've been carved out from (and thus should've survived) the district court's order excluding Schiehl's expert testimony because they were "based on personal observation" (that is, measurements and photographs taken either by Schiehl himself or by other eyewitnesses) and Schiehl's "experience in accident investigations, surveying, and hundreds of sea trials." For support, the Bodners cite *Adams*, which held that a district court manifestly erred in excluding an expert opinion that "was based on a widely accepted methodology and grounded in the available physical evidence." 760 F.3d at 1328–29 (quoting *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1342 (11th Cir. 2013)).

The Bodners haven't shown that Schiehl's bent-replacement and load-carrying opinions were reliable under *Adams* (and our other decisions applying *Daubert*). The Bodners put all their eggs

in *Adams*'s "grounded in the available physical evidence" basket, arguing that the district court erred by overlooking the fact that Schiehl's opinions were rooted in his own personal observations.

But *Adams* requires that those opinions be "based on a widely accepted methodology" too. Not only must expert testimony be "based upon sufficient facts or data," Fed. R. Evid. 702(b), but an expert's opinion is inadmissible when there's "an analytical gap between the data and the opinion," *United States v. Pon*, 963 F.3d 1207, 1220 (11th Cir. 2020) (quoting *Joiner,* 522 U.S. at 146). Put another way, "an expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions." *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (citing *Joiner,* 522 U.S. at 146). Ultimately, in assessing reliability, we "meticulously focus on the expert's principles and methodology, and not on the conclusions that they generate." *Id.* at 1298 (citation omitted).

The problem for the Bodners is that Schiehl's expert report reflected no methodology at all—let alone a "widely accepted methodology"—connecting the facts or data he considered to his opinions. *See Adams*, 760 F.3d at 1328–29. Schiehl identified a series of facts: (1) the actuator failed just before Bodner was injured; (2) the replacement actuator bent; (3) the actuator was installed off-center (and so "carries part of the load from the side"); and (4) the actuator's 500-pound dynamic load capacity wasn't much higher than the hatch door's 425-pound weight. And he cited those facts

as the basis for his opinion that the actuator was defective as designed and installed.

But Schiehl identified no analytical steps between those facts and his opinion. He admitted during his deposition that he didn't "understand the underlying facts of how" the replacement actuator's "rod bend occurred" because he wasn't given "detail" on "the circumstances." And he testified that he didn't do any testing of the actuator's load capacity. He also didn't measure the hatch's center of gravity, test the load-carrying difference between the starboard and port sides of the actuator, or test performance with either a second or higher-rated actuator installed. Schiehl couldn't point to "any damage pattern on the [actuators] that would reflect any damage due to an unbalanced raising and lowering of the load" either.

In sum, Schiehl completely failed to explain *how* or *why* either the bent replacement actuator, or the actuator's off-center installation, established defectiveness. The district court was thus left with only Schiehl's say-so connecting his conclusions to the existing data. *See McDowell*, 392 F.3d at 1300. In other words, there remained an unbridged "analytical gap" between Schiehl's observation of a bent replacement actuator and unbalanced load-carrying and his opinion that the actuator was defectively designed and installed. *See Pon*, 963 F.3d 1207, 1220. Therefore, even assuming Schiehl was qualified, the district court didn't abuse its discretion in finding his testimony on the second and third bases unreliable and, thus, inadmissible.

*Failure to Warn Claim*

"The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998). We generally won't review an error invited by a party. *Id.*

Here, any error by the district court in granting summary judgment was induced or invited by the Bodners. After the district court announced its *Daubert* order, the Bodners told the district court that the ruling "gut[ted] the[ir] case." They admitted that, with the expert testimony excluded, summary judgment was "inevitable and inescapable" and any argument to the contrary was "frivolous or otherwise unsupportable." "Based on . . . [this] concession," the district court granted summary judgment for Formula Boats.

Having conceded that summary judgment was inevitable and inescapable after the *Daubert* order, we will not reverse the district court for doing exactly what the Bodners said it had to do. *See Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1312 (11th Cir. 2019) ("We will not consider this argument because whatever error, if any, the district court committed by not considering the EEOC's claims as to Massage Envy's failure to reinstate or rehire Lowe was invited by the EEOC.").

**AFFIRMED.**